UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD WAYNE BLAIR,

    Petitioner,

v.

DANIEL WHITE,

    Respondent.

CASE NO. 3:18-CV-05771-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: February 8, 2019

The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner filed his federal habeas Petition ("Petition"), pursuant to 28 U.S.C. § 2254, seeking relief from a state court conviction. Dkt. 5. The Court concludes the state court's adjudication of the grounds raised in the Petition was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, the undersigned recommends the Petition be denied.

**BACKGROUND**

**I.**    **Factual Background**

The Washington Court of Appeals summarized the facts of Petitioner's case as follows:

> In January 2015, Payne rented a room in a detached garage on Robert and Daniel Berg's property. Blair occasionally shared the room with Payne. The morning of

REPORT AND RECOMMENDATION - 1

January 31, Blair entered the main home on the Bergs' property and awoke Robert. Blair then told Robert that he had killed Payne. Robert took Blair to a nearby transient camp while Daniel called the police.

When the police arrived at the Bergs' property, they discovered Payne's body in the rented room. There was a hammer and screwdriver next to Payne and blood spatter on the wall. Police identified a number of injuries on Payne, including multiple injuries to his head and back and severe lacerations on one of his wrists.

Soon after, police arrived at the transient camp and located Blair. Deputy Jeff Reigle placed Blair under arrest and walked Blair toward his patrol vehicle. While Deputy Reigle walked Blair to his patrol vehicle, he noticed that Blair was limping. Deputy Reigle asked if Blair was injured, and Blair answered in the negative, stating that he had been sleeping all day. Blair had not been read his Miranda warnings at this point.

Later, the police provided Blair with his Miranda warnings and interviewed him. During the interview, Blair stated that while he was sleeping, Payne hit him in the head with a hammer. Blair awoke and a struggle ensued. Blair stated that he stabbed Payne in the neck, cut Payne several times, and hit Payne with a hammer. Blair stated that he held Payne in a choke hold and said, "[B]ro man, don't make me f****** kill you dog." Blair also stated that the fight lasted for approximately 45 minutes before he strangled Payne to death.

The State subsequently charged Blair with one count of first degree murder. Before trial, the trial court held a CrR 3.5 hearing to determine the admissibility of Blair's statement to Deputy Reigle. The trial court, in its oral ruling, determined that Blair's statement was admissible, reasoning that Deputy Reigle's question regarding whether Blair was injured was not a custodial interrogation because the purpose of Deputy Reigle's question was to determine whether Blair required medical attention.

At trial, witnesses testified that Payne received injuries to his head, neck, and arms. One of the witnesses who testified was Dr. John Lacy, an associate medical examiner. Dr. Lacy concluded that multiple blunt and sharp force injuries, strangulation, and the loss of blood caused Payne's death. Dr. Lacy testified that Payne had a skull fracture as well as a number of bruises on his face, the back of his head, and his back that were caused by a blunt object consistent with a hammer. A number of lacerations on Payne's face and neck were caused by a sharp object. Some of the lacerations were so deep that they exposed bone, and Dr. Lacy discovered glass in a number of the injuries. Additionally, there were a number of deep lacerations on Payne's arms that were caused by a sharp object.

Dr. Lacy determined that Payne likely received the injuries to his head and neck and that these injuries substantially contributed to his death. Dr. Lacy also testified that Payne did not exhibit defensive wounds and that he would have been unable to

>defend himself after receiving the blows to his head. Dr. Lacy noted that the injuries to Payne's arms occurred after the injuries to his head.
>
>The jury found Blair guilty as charged. Blair appeals. While this appeal was pending, the trial court submitted its written findings and conclusions for the CrR 3.5 hearing that were consistent with its oral ruling.

*State v. Blair*, No. 49481-7-II, 2018 WL 1500674, at *1-2 (Wash. Ct. App. Mar. 27, 2018) (internal citations and footnotes omitted); Dkt. 11, Exhibit 2, pp. 1-3.

## II.    Procedural Background

Petitioner challenged his conviction on direct appeal with the Washington Court of Appeals. Dkt. 11, Exhibit 3. Petitioner argued two grounds on direct appeal: (1) Petitioner's statement to Deputy Reigle should have been suppressed because he was not advised of his *Miranda* rights before being subjected to custodial interrogation, and (2) the State produced insufficient evidence of premeditation, which is an essential element of first-degree murder. Dkt. 11, Exhibit 3, pp. 1-24. Petitioner also filed a Statement of Additional Grounds for Review with the Washington Court of Appeals, in which he argued that the prosecutor engaged in jury discrimination and the trial court erred in letting the prosecutor change his list of peremptory challenges. Dkt. 11, Exhibit 5. The Washington Court of Appeals affirmed Petitioner's conviction. *State v. Blair*, No. 49481-7-II, 2018 WL 1500674, (Wash. Ct. App. Mar. 27, 2018); Dkt. 11, Exhibit 2.

Petitioner then filed a Petition for Review with the Washington Supreme Court. Dkt. 11, Exhibit 6. Petitioner presented three issues to the Washington Supreme Court: (1) whether Petitioner's answer to Deputy Reigle's pre-*Miranda* question must be suppressed; (2) whether there was sufficient evidence to prove premeditation; and (3) whether issues raised in Petitioner's Statement of Additional Grounds for Review require reversal. Dkt. 11, Exhibit 6.

1     The Washington Supreme Court denied review without comment on August 8, 2018. *State v. Blair*, 422 P.3d 912 (Wash. 2018); Dkt. 11, Exhibit 7. The Washington Court of Appeals issued a mandate on August 29, 2018. Dkt. 11, Exhibit 8.

    On October 10, 2018, Petitioner filed his Petition with this Court, raising three grounds: (1) the State produced insufficient evidence to establish premeditation; (2) Petitioner's response to Deputy Reigle's pre-*Miranda* question should be suppressed; and (3) the prosecutor's use of peremptory challenges violated Petitioner's due process rights. Dkt. 5, pp. 5-8.

    Respondent filed a Response on November 21, 2018. Dkt. 10. Respondent concedes Petitioner exhausted Grounds 1 and 2, but argues Petitioner did not exhaust Ground 3 because he did not properly present it to the Washington Supreme Court. *Id.* at 4. Petitioner filed a Reply on December 5, 2018. Dkt. 12.[1]

## EVIDENTIARY HEARING

    The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see Cullen*, 131 S.Ct. 1388. The Court finds it is not

---

[1] Petitioner also filed a Motion to Appoint Counsel for Evidentiary Hearing. Dkt. 14. The Court has addressed this Motion in a separate Order. Dkt. 17.

1 necessary to hold an evidentiary hearing in this case because Petitioner's claims may be resolved
2 on the existing state court record.

**DISCUSSION**

Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S.Ct. at 1398.

### I. Whether the State presented insufficient evidence of premeditation at trial (Ground 1)

Petitioner asserts the State presented insufficient evidence of premeditation, which is required for a first-degree murder conviction. Dkt. 5, p. 5.

The Constitution forbids the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). When evaluating a claim of insufficiency of the evidence to support a conviction, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S.Ct. 2060, 2064 (2012) (quoting *Jackson*, 443 U.S. at 419). The jury is entitled to believe the State's evidence and to disbelieve the defense's evidence. *Wright v. West*, 505 U.S. 277, 296 (1992).

For cases involving premeditation, the State must show "the deliberate formation of and reflection upon the intent to take a human life." *State v. Sherrill*, 186 P.3d 1157 (Wash. Ct. App. 2008). A jury can draw an inference of premeditation from a physical struggle over an appreciable amount of time, injuries inflicted by various means, multiple wounds, or evidence that the victim was struck from behind. *State v. Allen*, 147 P.3d 581, 584 (Wash. 2006).

1	Petitioner was convicted of first-degree murder. Dkt. 11, Exhibit 1, p. 1. The Washington

2	Court of Appeals found the evidence was sufficient to convict Petitioner, and stated:

> Blair inflicted a number of injuries on Payne by various means—bruises to Payne's face, head, and back that were consistent with a hammer; lacerations on Payne's face, neck, and arms that contained glass and were made with a sharp object; and evidence of strangulation. The evidence shows that Blair continued to assault Payne after he was unable to defend himself. In addition, the altercation occurred over at least 45 minutes and provided Blair with a period of time to deliberate and reflect. Moreover, Blair's statement to Payne shows that he did, in fact, have the opportunity to deliberate and that he decided to kill Payne after that deliberation. Taken together, these facts demonstrate that Blair deliberately formed and reflected upon his intent to kill Payne. Thus, the State presented sufficient evidence to support Blair's conviction for first degree murder.

*Blair*, 2018 WL 1500674 at *4; Dkt. 11, Exhibit 2, pp. 8-9.

The evidence, when viewed in the light most favorable to the prosecution, was constitutionally sufficient to support the jury's verdict. The evidence at trial showed that Payne had multiple wounds to the back of his head, he did not have defensive wounds, and the injuries to his arms occurred after the injuries to his head and neck. *Id.* Additionally, Petitioner stated the fight lasted about 45 minutes. *Id.* The evidence of multiple wounds inflicted by various means over an appreciable amount of time, combined with evidence that Payne was struck from behind, was sufficient for a jury to draw an inference of premeditation. *See Allen*, 147 P.3d at 584.

Petitioner has not shown, nor does the Court find, the state court confronted facts that were materially indistinguishable from a relevant Supreme Court precedent and arrived at the opposite result or that the state court unreasonably applied the correct legal standard to the facts of Petitioner's case. Petitioner failed to demonstrate the state court's conclusion that there was sufficient evidence for the jury to determine Petitioner premeditated Payne's murder was contrary to, or an unreasonable application of, clearly established federal law, or was an

REPORT AND RECOMMENDATION - 7

unreasonable determination of the facts in light of the evidence presented at trial. Accordingly, Ground 1 should be denied.

### II.  Whether Deputy Reigle's pre-*Miranda* question constituted custodial interrogation (Ground 2)

Petitioner argues his response to Deputy Reigle's pre-*Miranda* question about Petitioner limping and whether he was injured should have been suppressed. Dkt. 5, p. 7. Respondent concedes Petitioner was in custody at the time of Deputy Reigle's question. Dkt. 10, pp. 12-13. Thus, the Court will address only whether Deputy Reigle's question constituted "interrogation."

A suspect who is subjected to custodial interrogation must first be informed of his *Miranda* rights. *Roberts v. United States*, 445 U.S. 552, 560-61 (1980); *see also Miranda v. Arizona*, 384 U.S. 436 (1966); *State v. Sargent,* 762 P.2d 1127 (Wash. 1988). "Interrogation" occurs "whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). Thus, interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. Washington courts look to an objective test to determine whether questions are reasonably likely to elicit an incriminating response. *State v. Shuffelen*, 208 P.3d 1167, 1173 (Wash. Ct. App. 2009). This test "focuses on the perceptions of the suspect, rather than on the intent of the police." *State v. Wilson*, 181 P.3d 887, 895 (Wash. Ct. App. 2008), *as amended* (May 20, 2008) (citing *Innis*, 446 U.S. at 301).

The Washington Court of Appeals held Deputy Reigle's question regarding Petitioner's limp did not constitute custodial interrogation. The Court stated:

> While escorting Blair to his patrol vehicle, Deputy Reigle noticed Blair was limping and asked if he was injured. Deputy Reigle's question was not intended to elicit information for investigatory purposes. Deputy Reigle did not ask what caused Blair to limp or if he had been in an altercation. Using an objective test, it is clear

      that Deputy Reigle asked Blair if he was injured to determine whether Blair needed medical care before being transported to the police station. Accordingly, it cannot be said that Deputy Reigle should have known that his question was reasonably likely to elicit an incrimination [sic] response. As a result, Deputy Reigle's question was not interrogation. Therefore, the trial court's findings support its conclusion that Blair's statement to Deputy Reigle was admissible at trial.

*Blair*, 2018 WL 1500674 at *3; Dkt. 11, Exhibit 2, pp. 6-7.

Under the objective test followed under state law, the record shows Deputy Reigle did not ask Petitioner about his limp in an attempt to elicit an incriminating response. Deputy Reigle did not ask Petitioner why he was limping or whether any injury causing the limp occurred recently. His question was objectively intended only to determine whether Petitioner required medical care. Thus, it was not reasonably likely to elicit an incriminating response and was not an interrogation.

Petitioner failed to demonstrate the state court's conclusion that Deputy Reigle's question did not constitute custodial interrogation was contrary to, or an unreasonable application of, clearly established federal law, or was an unreasonable determination of the facts in light of the evidence presented at trial. Accordingly, Ground 2 should be denied.

**III.    Whether the prosecutor's use of peremptory challenges violated Petitioner's due process rights (Ground 3)**

Petitioner also argues the prosecutor's use of peremptory challenges at his trial violated his due process rights. Dkt. 5, p. 8.[2] In his Statement of Additional Grounds for Review before the Washington Court of Appeals, Petitioner alleged two ways in which the prosecutor misused peremptory challenges: (1) by excluding a potential juror on the basis of that person's criminal

---

[2] Petitioner did not make any new arguments in his Petition but referred the Court to his brief to the Washington Court of Appeals, his Statement of Additional Grounds for Review before the Washington Court of Appeals, and his Petition for Review to the Washington Supreme Court. Dkt. 12, p. 2; *see also* Dkt. 11, Exhibits 3, 5-6.

REPORT AND RECOMMENDATION - 9

record, and (2) by violating state law in the process of exercising peremptory challenges. Dkt. 11, Exhibit 5.

Respondent argues Petitioner has not exhausted this ground because he did not properly present it to the Washington Supreme Court. Dkt. 10, p. 4. Regardless of whether Petitioner exhausted Ground 3, the Court determines the due process claim fails because Petitioner has not shown the state court's adjudication of the grounds raised in the Petition was contrary to, or an unreasonable application of, clearly established federal law.

### A. Whether the prosecutor engaged in jury discrimination by exercising a peremptory challenge against a prospective juror with a criminal record

Petitioner argues the prosecutor engaged in jury discrimination by removing a potential juror solely because of that person's criminal record. Dkt. 11, Exhibit 5, pp. 1-5.

When alleging jury discrimination, a criminal defendant must make a prima facie showing that a peremptory challenge has been exercised on a prohibited basis, such as race or gender. *Miller-El v. Cockrell*, 537 U.S. 322 (2003) (citing *Batson v. Kentucky*, 476 U.S. 79, 96-97 (1986)); *see also J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129 (1994). To do so, the defendant must make two showings: (1) "the peremptory challenge was exercised against a member of a constitutionally cognizable . . . group," and (2) "this fact, taken together with other relevant circumstances, raises an inference that the prosecutor's challenge was based on the status of the venire-person as a member of that group." *State v. Rhodes*, 917 P.2d 149, 151 (Wash. Ct. App. 1996) (internal quotation marks omitted).

Regarding Petitioner's argument about a peremptory challenge being used for jury discrimination, the Washington Court of Appeals stated:

> During voir dire, juror 38 stated that he had been convicted of possession of a controlled substance with the intent to deliver. Later, the prosecutor exercised a peremptory challenge against juror 38. Blair fails to meet his burden in establishing

> a prima facie case of purposeful jury discrimination. Blair does not show that those with prior convictions are members of a constitutionally cognizable group and does not show that the prosecutor's peremptory challenge of juror 38 was based on the potential juror's membership in a constitutionally cognizable group. As a result, Blair fails to make a prima facie showing of purposeful discrimination. Thus, Blair's claim fails.

*Blair*, 2018 WL 1500674 at *5; Dkt. 11, Exhibit 2, pp. 9-10.

No U.S. Supreme Court case has held that potential jurors with criminal records are part of a constitutionally cognizable group for jury discrimination purposes. Additionally, Petitioner has not shown "other relevant circumstances" that would raise an inference that the prosecutor's peremptory challenge was based on the potential juror's status as a person with a criminal record. Thus, Petitioner has not made a prima facie showing of jury discrimination and has not shown that the state court's decision to allow the prosecutor to use a peremptory challenge to remove a potential juror with a criminal record was contrary to, or an unreasonable application of, clearly established federal law.

**B. Whether the prosecutor violated state law by changing one of his peremptory challenges**

Petitioner argues the prosecutor violated state law by changing one of his peremptory challenges. Dkt. 11, Exhibit 5, pp. 1-2.

Washington state law provides that, when exercising peremptory challenges against potential jurors, "[t]he plaintiff may challenge one, and then the defendant may challenge one, and so alternately until the peremptory challenges shall be exhausted." RCW 4.44.210.

Regarding Petitioner's argument about the prosecutor's change to the peremptory challenges list, the Washington Court of Appeals held:

> During jury selection, Blair and the prosecutor recorded their peremptory challenges by exchanging a list and alternately writing the names of the potential jurors they sought to challenge. After the prosecutor wrote six potential jurors' names, Blair chose to exercise only five peremptory challenges. Then, the

1
2
3
4
    prosecutor changed his peremptory challenge list by crossing out the name of a potential juror he had written and replacing it with the name of a different potential juror. Blair objected. The trial court allowed the altered peremptory challenge list, reasoning that the list was not final at the time the prosecutor altered it because the list had not been submitted to the court. Blair was also given the opportunity to change his peremptory challenge list.

5
6
7
8
    Blair fails to show that the trial court violated the procedure for exercising peremptory challenges. The prosecutor and Blair alternately wrote the names of the potential jurors they wished to challenge until the jury was accepted. The prosecutor's action in replacing one potential juror on the challenge list with a different potential juror did not violate this procedure. Moreover, Blair also had the opportunity to change his peremptory challenge list. As a result, the trial court exercised its broad discretion in accepting the prosecutor's altered peremptory challenge list. Accordingly, Blair's claim lacks merit.

9 *Blair*, 2018 WL 1500674 at *5; Dkt. 11, Exhibit 2, pp. 11-12.

10     Washington law does not prohibit a party from changing peremptory challenges before

11 the list is final. *See* RCW 4.44.210. Here, the prosecutor submitted a peremptory challenge list

12 and then changed it by replacing the name of one potential juror name with the name of a

13 different potential juror. But, the state court found the prosecutor list was not final at the time the

14 change was made. In addition, Petitioner had an opportunity to change his challenge list after the

15 change to the prosecutor's challenge list. Thus, Petitioner has not shown that the prosecutor's

16 change to his list of peremptory challenges violated state law. Additionally, federal habeas

17 corpus relief cannot be granted for violations of state law. *Estelle v. McGuire*, 502 U.S. 62, 67

18 (1991). Thus, even if Petitioner showed the prosecutor violated state law in changing his

19 peremptory challenge, he has not shown the court's decision to allow the change was contrary to,

20 or an unreasonable application of, clearly established federal law.

21     For both arguments regarding the use of peremptory challenges, Petitioner has not shown

22 the state court made a decision that was contrary to, or an unreasonable application of, clearly

23 established federal law. Thus, Ground 3 should be denied.

24

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or would conclude the issues presented in the Petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

## CONCLUSION

The Court recommends the Petition be denied. No evidentiary hearing is necessary, and a certificate of appealability should be denied. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on February 8, 2019, as noted in the caption.

Dated this 18th day of January, 2019.

/s/ David W. Christel
David W. Christel
United States Magistrate Judge